IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:12-CT-3017-F

| | |
|---|---|
| JAMES D. BURGESS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| COUNTY OF JOHNSTON, *et al.*, ) | |
| ) | |
| Defendants. ) | |

On January 20, 2012, James D. Burgess ("Burgess" or "plaintiff"), an inmate in the custody of the State of North Carolina currently incarcerated at Lumberton Correctional Institution, filed this action under 42 U.S.C. § 1983 alleging deliberate indifference to his serious medical needs while detained as a "safekeeper" at Central Prison. Plaintiff has requested leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915(a) [D.E. # 2, 5]. The matter is presently before the court for screening pursuant to § 1915(e).

Section 1915 provides that courts shall review complaints in which the plaintiff seeks to proceed *in forma pauperis* and dismiss any case that is "frivolous or malicious," that "fails to state a claim on which relief may be granted," or that "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(i)-(iii); see Neitzke v. Williams, 490 U.S. 319, 328 (1989). A case is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke, 490 U.S. at 325. Claims that are legally frivolous are "based on an indisputably meritless legal theory and include claims of infringement of a legal interest which clearly does not exist." Adams v. Rice,

1

Case 5:12-ct-03017-F Document 7 Filed 05/03/12 Page 1 of 7

40 F.3d 72, 75 (4th Cir. 1994) (quotations omitted). Claims that are factually frivolous lack an "arguable basis" in fact. Neitzke, 490 U.S. at 325. The standard used to evaluate the sufficiency of the pleading is flexible, and a pro se complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (quotation omitted). Erickson, however, does not dispense with the "requirement that a pleading contain 'more than labels and conclusions.'" Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (quoting Bell Atlantic Com. v. Twombly, 550 U.S. 544, 555 (2007)); see Ashcroft v. Iqbal, 556 U.S. 662, 677-80 (2009); Nemet Chevrolet Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255-56 (4th Cir. 2009); Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009).

Plaintiff's complaint alleges that he suffered a broken leg when he crashed a motorcycle during a "chase." Compl. ¶ 17. His leg was placed in a cast and, upon being discharged from the hospital, plaintiff was taken into custody by the Johnston County Sheriff's Department. Id. at ¶¶ 18-20. Because the Johnston County Detention Center did not have facilities adequate for treating plaintiff's medical condition, he was transferred to Central Prison for medical "safekeeping." Id. at ¶¶ 21-22. Plaintiff claims that, during his first two to three weeks at Central Prison, the condition of his leg worsened and he complained repeatedly to medical staff about his pain and his belief that his condition needed attention. Id. at ¶¶ 24-32. He avers that staff failed to render appropriate treatment despite apparent bleeding from under the cast, a foul odor emanating from his leg, and "black slimy stuff" plaintiff produced from under the cast. Id. Plaintiff claims that when he was finally transported to Wake Orthopaedic to be seen by a physician, it was determined that his wound had become infected and that his leg would be amputated above the ankle. Id. at ¶¶ 34-35. Plaintiff
2

was readmitted to the hospital and his leg was amputated. Plaintiff claims as follows: "If the medical staff at Johnston County Detention Center, Central Prison Hospital, or Wake Orthopaedics, LLC, would have given me the proper medical attention, then my foot would not have had to be amputated." Id. at ¶ 37. Plaintiff seeks a declaratory judgment that his constitutional rights were violated, compensatory damages in the amount of $146,927.11 for his medical expenses, and punitive damages in the amount of $750,000.00. Id. at ¶¶ 43-45.

At the outset, the court finds that a number of defendants named in the complaint are due to be dismissed for failure to state a claim for which relief could be granted as to such defendants. Plaintiff's claims against Johnston County and its Sheriff's Department and Detention Center are due to be dismissed. Neither the Johnston County Sheriff's Department nor the Johnston County Detention Center is a legal entity capable of being sued. Parker v. Bladen County, 583 F. Supp.2d 736, 740 (E.D.N.C. 2008). While Johnston County itself is a legal entity subject to suit, plaintiff has not alleged that any deprivation inflicted upon him was as a result of a policy or custom of Johnston County and the county may not be held liable under a theory of respondeat superior. Monell v. Dept. of Soc. Servs., 436 U.S. 658, 690-91 (1978). As such, plaintiff has failed to state a claim against Johnston County. Indeed, taking plaintiff's allegations on their face, it is apparent that the alleged "deliberate indifference" about which plaintiff complains was confined to Central Prison while he was a "safekeeper," and had nothing to do with Johnston County or its Sheriff's Department and Detention Center. Thus, plaintiff has failed to make any allegation against Johnston County or its Sheriff's Department or Detention Center which consists of more than "mere labels and conclusions" or is sufficient to "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. Similarly, while plaintiff names as a defendant an employee of the Johnston County Sheriff's

Department, Captain Strickland, he fails to allege that Captain Strickland did anything other than arrange for plaintiff's transfer to Central Prison. Compl. ¶ 21. Accordingly, plaintiff has failed to state a claim for relief as to Captain Strickland and he is due to be dismissed as a defendant in this matter.

Plaintiff also names several officials of the North Carolina Department of Corrections as defendants, including Paula Smith, "the Director of Medical Care of the State of North Carolina," Alvin Keller, "the Secretary of the Division of Prisons of the State of North Carolina," and Robert Lewis, "the Director of the State of North Carolina." Compl. ¶¶ 11-13. Plaintiff contends that each of these defendants is "responsible for the overall operations of the Department and each institution under it jurisdiction, including Central Prison." Id. However, plaintiff makes no allegation of any specific act or omission by any of these defendants which violated some federally protected right of plaintiff's. Thus, because liability under § 1983 cannot be premised merely on allegations of respondeat superior, Monell, 436 U.S. at 691, plaintiff has failed to state a claim as to these officials. Accordingly, defendants Smith, Keller, and Lewis are due to be dismissed as parties to this suit.

Plaintiff has also named as a defendant Wake Orthopaedics, LLC, which he claims is "legally responsible for the care and welfare of the inmates of the Johnston County Detention Center." Compl. ¶ 7. Plaintiff's only allegations concerning Wake Orthopaedics indicate that he was taken there by Central Prison staff on two occasions after he had been at Central for approximately two weeks. It was at Wake Orthopaedics where his cast was finally removed and his wound examined by a physician, who subsequently determined that the leg must be amputated. Id. at ¶¶ 33-35. Plaintiff does not allege that Wake Orthopaedics or any of its employees were responsible for the care he received while at Central Prison, and he does not allege that the care he received at Wake

4

Orthopaedic somehow violated his constitutional rights. Moreover, even if plaintiff had alleged a claim against a discrete employee of Wake Orthopaedics, as set forth above, there is no claim for respondeat superior liability in § 1983 actions. See Rodriguez v. Smithfield Packing Co., 338 F.3d 348, 355 (4th Cir. 2003) (applying Monell rule against respondeat superior liability in context of private corporations). Thus, even assuming that Wake Orthopaedics could be sued under § 1983 as a "person" acting under color of state law, plaintiff has failed to state a claim as to such entity in the complaint. Accordingly, Wake Orthopaedics is due to be dismissed as a defendant to this action.

With respect to plaintiff's claims against the remaining defendants, because it does not clearly appear from the face of the complaint that plaintiff is not entitled to relief, the court will allow the case to proceed as to defendants Dr. Ingokea, Nurse Idell, and the John and Jane Doe defendants described in the complaint.[1] Accordingly, it is ORDERED that plaintiff's claims against

---

[1] In allowing plaintiff's claims against these defendants to proceed, the court is rendering no judgment about whether plaintiff's suit should be dismissed in its entirety due to his failure to exhaust administrative remedies. In fact, the court is gravely concerned about the viability of plaintiff's action in light of the exhaustion requirement of the Prisoner Litigation Reform Act ("PLRA"). Plaintiff openly concedes in the complaint that he did not exhaust his claims in available grievance procedures. Compl. ¶ 39. The PLRA states that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); see Woodford v. Ngo, 548 U.S. 81, 84 (2006) (noting that exhaustion under the PLRA is mandatory). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). A prisoner must exhaust his administrative remedies even if the specific relief he seeks in his complaint is not available through the administrative process. Booth v. Churner, 532 U.S. 731, 741 (2001). "[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court." Jones v. Bock, 549 U.S. 199, 211 (2007). Furthermore, exhaustion is mandatory "even where the inmate claims that exhaustion would be futile." Reynolds v. Doe, 431 F. App'x 221, 222 (4th Cir. 2011) (unpublished decision) (citing Booth, 532 U.S. at 741 n.6).

The PLRA does not require that an inmate allege or demonstrate in his complaint that he has exhausted his administrative remedies. See Anderson v. XYZ Correctional Health Servs., 407 F.3d
(continued...)

defendants County of Johnston, Wake Orthopaedics, LLC, Johnston County Sheriff's Department, Johnston County Detention Center, Captain Strickland, Paula Smith, Alvin Keller, and Robert Lewis are DISMISSED and those defendants are DISMISSED as parties to this action. With respect to the remaining defendants, this case shall proceed and the Clerk is therefore DIRECTED to maintain management of the matter.

In a motion for default judgment [D.E. # 6] filed on March 7, 2012, Plaintiff states that defendants were served with his complaint on January 26, 2012. Plaintiff is incorrect, as entry of this order is the event which may trigger service of plaintiff's complaint on any defendant. Accordingly, the motion for entry of default judgment [D.E. # 6] is DENIED.

---

[1](...continued)
674, 675 (4th Cir.2005). Rather, a defendant must plead and prove the failure to exhaust. See id. at 676. Nonetheless,

> that exhaustion is an affirmative defense, however, does not preclude the district court from dismissing a complaint where the failure to exhaust is apparent from the face of the complaint, nor does it preclude the district court from inquiring on its own motion into whether the inmate exhausted all administrative remedies.

Id. at 683; see also Green v. Rubenstein, 644 F.Supp.2d 723, 741-42 (S.D.W.Va.2009). A district court may dismiss an action *sua sponte* for failure to exhaust remedies only in those rare instances when, in addition to the apparency of the failure to exhaust on the face of the complaint, it is also clear that the plaintiff "had no valid excuse for not doing so." Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008). Given these authorities, it is apparent that plaintiff's failure to exhaust could prove fatal to his suit. However, because the court is unable to conclude on the record before it whether plaintiff might have a "valid excuse" for failing to exhaust, and because defendants will be in a better position to inform the court about the specific administrative remedy procedures made available to plaintiff, the court elects not to *sua sponte* dismiss plaintiff's case in its entirety on exhaustion grounds.

6

SO ORDERED. This the 3rd day of May, 2012.

                                         *James C. Fox*
                                         JAMES C. FOX
                                         Senior United States District Judge