IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:12-CT-3017-F

| | | |
|---|---|---|
| JAMES D. BURGESS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| VINCENT IGBOEKWE, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

On January 20, 2012, James D. Burgess ("Burgess" or "plaintiff"), an inmate in the custody of the State of North Carolina currently incarcerated at Lumberton Correctional Institution, filed this action *pro se* under 42 U.S.C. § 1983, alleging deliberate indifference to his serious medical needs while detained as a "safekeeper" at Central Prison. Compl. [D.E. # 1] ¶ 41.[1] On May 3, 2012, the

---

[1] The court has previously summarized the factual allegations of the complaint, as well as plaintiff's claims, as follows:

> Plaintiff's complaint alleges that he suffered a broken leg when he crashed a motorcycle during a "chase." His leg was placed in a cast and, upon being discharged from the hospital, plaintiff was taken into custody by the Johnston County Sheriff's Department. Because the Johnston County Detention Center did not have facilities adequate for treating plaintiff's medical condition, he was transferred to Central Prison for medical "safekeeping." Plaintiff claims that, during his first two to three weeks at Central Prison, the condition of his leg worsened and he complained repeatedly to medical staff about his pain and his belief that his condition needed attention. He avers that staff failed to render appropriate treatment despite apparent bleeding from under the cast, a foul odor emanating from his leg, and "black slimy stuff" plaintiff produced from under the cast. Plaintiff claims that when he was finally transported to Wake Orthopaedic to be seen by a physician, it was determined
>
> (continued...)

court entered an order [D.E. # 7] on frivolity review of the complaint pursuant to 28 U.S.C. § 1915(e). The order dismissed several of the defendants plaintiff named in the complaint, but determined that plaintiff's claims against other defendants should go forward Thus, the court separately entered an order of investigation [D.E. # 8], pursuant to this District's Prisoner Representation Plan, instructing North Carolina Prisoner Legal Services, Inc. ("NCPLS"), to investigate plaintiff's claims and file a response with the court on or before August 1, 2012.

On August 1, 2012, the court entered an order [D.E. # 17] granting NCPLS's motion for an extension of time in which to file its response. NCPLS requested the extension in order to obtain "medical records and communicate more with Plaintiff." Pl.'s Mot. 1. The court ordered that NCPLS file its response on or before September 30, 2012. NCPLS filed its response [D.E. # 20], accepting representation of plaintiff, on September 19, 2012.

On October 18, 2012, defendant Dr. Igboekwe filed his answer [D.E. # 26] to the complaint and a motion to dismiss [D.E. # 29]. Plaintiff thereafter filed two motions, a "Motion to Stay Proceedings" [D.E. # 28], filed on November 5, 2012, and a "Motion for Extension of Time" [D.E. # 29], filed on November 7, 2011. Plaintiff's "Motion to Stay Proceedings" is premised on counsel's professed need for "adequate time to prepare a thoroughly researched and investigated amended

---

[1](...continued)
that his wound had become infected and that his leg would be amputated above the ankle. Plaintiff was readmitted to the hospital and his leg was amputated. Plaintiff claims as follows: "If the medical staff at Johnston County Detention Center, Central Prison Hospital, or Wake Orthopaedics, LLC, would have given me the proper medical attention, then my foot would not have had to be amputated." Plaintiff seeks a declaratory judgment that his constitutional rights were violated, compensatory damages in the amount of $146,927.11 for his medical expenses, and punitive damages in the amount of $750,000.00.

Order [D.E. # 7] 2-3 (citations omitted).

2

complaint" and his corresponding need to "collect additional medical records, a process which may take several weeks." Pl.'s Mem. in Supp. of Mot. To Stay [D.E. # 28-1] 2. The "Motion for Extension of Time" seeks "an extension of 21 days up to and including November 26, 2011, in which to file" a response to defendant's motion to dismiss. Pl.'s Mot. for Ext. 1. Plaintiff nevertheless filed his response [D.E. # 30] to the motion to dismiss on November 7, 2011. Defendant has filed a reply [D.E. # 32] to plaintiff's response, as well as a response [D.E. # 33] opposing plaintiff's motion to stay. All of these matters are fully briefed and are ripe for ruling.

I.  Defendant's Motion to Dismiss

Defendant has filed a motion to dismiss the complaint, arguing that plaintiff has

> (1) failed to exhaust his available administrative remedies pursuant to the Prison Litigation Reform Act ["PLRA"]; (2) failed to state a claim for deliberate indifference to a serious medical need pursuant to 42 U.S.C. § 1983 ("§ 1983") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure; (3) failed to comply with Rule 9(j) of the North Carolina Rules of Civil Procedure; (4) failed to state a claim for declaratory relief and/or punitive damages; and (5) failed to comply with Rule 11 of the Federal Rules of Civil Procedure in that Plaintiff failed to sign his Complaint.

Def.'s Mot. to Dis. [D.E. # 24] 1. Because the court finds the first of defendant's contentions dispositive of this matter, the court need not address every ground for dismissal asserted by defendant.

Defendant's motion to dismiss on exhaustion grounds is not expressly predicated on any specific provision of the Federal Rules of Civil Procedure. See Def.'s Supp. Mem. [D.E. # 25] 5-8. This appears deliberate, as elsewhere defendant has asserted that the complaint should be dismissed pursuant to specific provisions of federal and state rules of procedure. See id. at 8-9. Nevertheless, the court construes the motion to dismiss on exhaustion grounds as arguing that the complaint should

be dismissed for failure to state a claim upon which relief could be granted pursuant to Rule 12(b)(6). See Jean-Pierre v. Federal Bureau of Prisons, _ F. Supp.2d _, 2012 WL 3065377, *6-*7 (D. D.C. July 30, 2012) (granting Rule 12(b)(6) motion on failure to exhaust grounds).

When subjected to a Rule 12(b)(6) motion, a "complaint must be dismissed if it does not allege 'enough facts to state a claim to relief that is *plausible* on its face.'" Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir.2008) (emphasis in original) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The Supreme Court in Twombly upheld a Rule 12(b)(6) dismissal because the complaint failed to allege facts sufficient to show a claim was plausible rather than merely conceivable. See Monroe v. City of Charlottesville, Va., 579 F.3d 380, 386 (4th Cir.2009), cert. denied, 130 S.Ct. 1740 (2010). Accordingly, while a reviewing court must "accept as true all well-leaded allegations and view the complaint in the light most favorable to the plaintiff, Philips v. Pitt County Memorial Hosp., 572 F.3d 176, 180 (4th Cir. 2009), the court still "must determine whether it is plausible that the factual allegations in the complaint are enough to raise a right to relief above the speculative level." Simmons v. United Mortg. and Loan Inv., LLC, 634 F.3d 754, 768 (4th Cir.2011) (internal quotations and citations omitted). In doing so, "the court need not accept the legal conclusions drawn from the facts, and need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Monroe, 579 F.3d at 385–86 (quotation marks and alteration marks omitted).

As set forth above, ordinarily a motion to dismiss pursuant to Rule 12(b)(6) is concerned only with whether the complaint adequately states a claim for relief. It generally "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). However, an affirmative defense, like the failure

4

to exhaust administrative remedies as required by the PLRA, may be raised in a motion to dismiss pursuant to Rule 12(b)(6) where the facts necessary to resolve the applicability of the defense are alleged in the complaint and supporting documents attached thereto. See Goodman v. Pixair, Inc., 494 F.3d 458, 464 (4th Cir. 2007) (en banc). Moreover, "[i]n reviewing a Rule 12(b)(6) [motion, the court] may properly take judicial notice of matters of public record . . . [and may also] consider documents attached to the complaint, as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." Phillips v. Pitt County Memorial Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

In its prior order on frivolity review, the court recognized that exhaustion of administrative remedies could be an important issue in this case going forward. The court first generally described the PLRA's exhaustion requirement:

> The PLRA states that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); see Woodford v. Ngo, 548 U.S. 81, 84 (2006) (noting that exhaustion under the PLRA is mandatory). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). A prisoner must exhaust his administrative remedies even if the specific relief he seeks in his complaint is not available through the administrative process. Booth v. Churner, 532 U.S. 731, 741 (2001). "[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court." Jones v. Bock, 549 U.S. 199, 211 (2007). Furthermore, exhaustion is mandatory "even where the inmate claims that exhaustion would be futile." Reynolds v. Doe, 431 F. App'x 221, 222 (4th Cir. 2011) (unpublished decision) (citing Booth, 532 U.S. at 741 n.6).

Order [D.E. # 7] 5 n.1. The court also observed that "Plaintiff openly concedes in the complaint that

he did not exhaust his claims" before filing suit.[2] Id. Finally, the court noted that, while it could raise failure to exhaust *sua sponte* as part of its review pursuant to 28 U.S.C. § 1915(e), "because defendants will be in a better position to inform the court about the specific administrative remedy procedures made available to plaintiff, the court elects not to *sua sponte* dismiss plaintiff's case in its entirety on exhaustion grounds." Id.

Defendants have now asserted the affirmative defense of plaintiff's failure to exhaust. In support, they rely upon plaintiff's own admission of and explanation for his failure to exhaust, as well as the text of the Administrative Remedy Procedure ("ARP")–a public record–set forth in regulations establishing the Department of Corrections' Policy & Procedures.[3] See Def.'s Ans. ex. B [D.E. # 26-2]. These authorities conclusively establish that an administrative remedy procedure encompassing plaintiff during his time as a "safekeeper" at Central Prison existed yet was not

---

[2] Plaintiff's complete explanation in the complaint about his failure to exhaust is as follows:

> Plaintiff, James Burgess did not use the prisoner grievance procedure due to the fact that the [sic] was not in the Department of Corrections as a sentenced inmate, but only in custody for medical care and safe keeping. Johnston County Detention Center still had full custody and control over James Burgess. This incident happened so quickly, he did not have the time or was not taken back to Johnston County Detention Center to be able to file a grievance. We ask the court to waive this requirement as this would be a burden to accomplish since now he is in the custody of Department of Corrections. See: Kilgo v. Ricks, 983 F.2d 189 (11th Cir. 1993) "District Court should not erect unnecessary procedural boundaries which many pro se litigants will have difficulty surrounding [sic]."

Compl. 10-11.

[3] Defendant also cites to a recent decision from this District in which the court held that prisoners detained as "safekeepers" at Central Prison, like plaintiff during the time at issue in this suit, are able, and required, to use the ARP described in the Department's Policy & Procedures. See Klinger v. Frye, 2012 WL 828419, *2 (E.D.N.C. Mar. 9, 2012) ("Thus, the ARP extends to all persons in DOC custody, including safekeepers.").

utilized by him. Indeed, through counsel, plaintiff appears to concede as much: "Here the Defendant has shown only that a procedure exists." Pl.'s Resp. [D.E. # 30] 4.

Given this admission, the crux of the dispute between the parties is therefore reduced to whether the ARP was truly "available" to plaintiff. The Fourth Circuit has remarked that, "[b]ecause the PLRA does not define ["available"], courts have generally afforded it its common meaning; thus, an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008). Plaintiff essentially contends that the ARP was not available to him because he "was unaware that he could file a grievance in Central Prison, while being held as a safekeeper." Id. He maintains that it is "[i]mplied in [the] complaint . . . that he was not made aware of the administrative remedy procedure for safekeepers. Therefore, to be entitled to relief on a theory of non-exhaustion, Defendant must establish that the procedure was explained to him. . . . [I]t is not enough for Defendant to simply assert that a remedy was available; they must offer proof that such a procedure was in fact available by demonstrating Mr. Burgess was made aware of it." Id. The court first finds that, in arguing that defendants must show that the ARP was available in accordance with plaintiff's theory of availability, plaintiff is conflating two separate inquiries germane to the exhaustion issue and also misallocating the parties' relative burdens. While it is true that, because it is an affirmative defense, defendant must plead and prove plaintiff's failure to exhaust, Anderson v. XYZ Correctional Health Servs., 407 F.3d 674, 676 (4th Cir. 2005), courts have also recognized that, where the existence of a grievance procedure covering the inmate plaintiff is established, the burden to show that such procedure was actually unavailable rests with the plaintiff. See, e.g., Graham v. Gentry, 413 F. App'x 660, 663 (4th Cir. 2011) ("in order to show that a grievance procedure was not

7

'available,' a prisoner must adduce facts showing that he was prevented, through no fault of his own, from availing himself of that procedure."). Defendant has shown that a procedure existed and that plaintiff did not utilize it. Thus, in order to survive defendant's motion to dismiss, plaintiff must at least plausibly allege that the existing procedure was not available to him because facility administrators prevented him from using it.

The court finds that the complaint, as well as plaintiff's response to the motion to dismiss, fails to meet this burden. It is evident that there is a tension between what plaintiff argues would render the procedure available to him and what courts interpreting the PLRA generally require. Plaintiff apparently believes that availability can be achieved only through specific, individualized, and unsolicited instruction about the ARP's applicability to safekeepers. The ARP itself requires that inmates be apprized of available grievance procedures, including that a "standard written notification of the Administrative Remedy Procedure shall be given to each inmate as part of orientation at the Diagnostic Center," an explanation of the procedure at orientation, access to copies of the ARP, and the requirement that the ARP "be posted in conspicuous locations throughout the unit or institution and shall be kept current in all libraries." ARP §§ .0302(a)(1), .0302(b)(1), Def.'s Ans. ex. B [D.E. # 26-2] 2-3. Plaintiff makes no specific allegation that any of these "accessibility" and "availability" provisions of the ARP were not followed. Moreover, as defendant observes, plaintiff's own allegations indicate that he was at least aware of an existing grievance procedure, but that he failed to avail himself of it due to ignorance or confusion about his custodial status and transfers between facilities. See Compl. 10 (plaintiff "did not use the prisoner grievance procedure due to the fact that the [sic] was not in the Department of Corrections as a sentenced inmate, but only in custody for medical care and safe keeping. . . . This incident happened so quickly, he did not have

8

the time or was not taken back to Johnston County Detention Center to be able to file a grievance."). While these allegations perhaps illuminate an understandable and regrettable confusion on plaintiff's part, they do not support any contention that defendants "prevented" plaintiff from availing himself of the ARP such that it was made unavailable to him. It is telling that plaintiff does not allege that at some point he, as a safekeeper, sought clarification on whether, when, and how he might file a grievance relating to his claims which was effectively ignored or frustrated by officials. Thus, as a factual matter, it simply does not follow that plaintiff was prevented, through no fault of his own, from filing a grievance concerning his claims.

The weight of available legal authority also does not support plaintiff's position. Plaintiff cites a couple unpublished district court cases, Russell v. Unkown Cook County Sheriff's Officers, 2004 WL 2997503 (N.D. Ill. Dec. 27, 2004), and Cabrera v. LeVierge, 2008 WL 215720 (D. N.H. Jan. 24, 2008), for the proposition that officials' purported failure to explain the grievance process to him rendered it "unavailable" for purposes of the PLRA. Plaintiff relies upon a passage in Russell in which the court reasons that a defendant arguing failure to exhaust must "establish that the grievance procedure was posted in such a manner that [the plaintiff] could reasonably be expected to see it, or that Jail employees explained the procedure to him." Pl.'s Resp. 4 (quoting Russell, 2004 WL 2997503, *4-*5). Of course, as set forth above, these specific measures appear to be required by the terms of the ARP employed at Central Prison and plaintiff's explanation for his failure to exhaust both evinces some understanding of the existence of the ARP while omitting any allegation that the ARP was not posted or available for review upon request. Thus, Russell is of little use in plaintiff's case.

More importantly, the rationale articulated by plaintiff, that he was ignorant of the process

9

due to administrators' purported failures, has been rejected by numerous courts, including in this District. See, e.g., Napier v. Laurel County, Kentucky, 636 F.3d 218, 221-22 (6th Cir. 2011) (rejecting inmate-plaintiff's argument that "administrative remedies were not available to him" because administrators "failed to explain its grievance policy or the PLRA to him"); id. at n.2 ("A plaintiff's failure to exhaust cannot be excused by ignorance of the law or the grievance policy.") (collecting cases); Twitty v. McCoskey, 226 F. App'x 594, 596 (7th Cir. 2007) ("prisoner's lack of awareness of a grievance procedure . . . does not excuse compliance") (unpublished decision); Graham v. County of Gloucester, Virginia, 668 F.Supp.2d 734, 741 (E.D. Va. 2009) ("a prisoner's claim that the grievance system was unavailable to him because he lacked full knowledge of the specifics of the grievance process does not excuse or waive a failure to exhaust administrative remedies."); Grady v. Winders, 2012 WL 4753313, *2 (E.D.N.C. Oct. 4, 2012) (granting Rule 12(b)(6) motion to dismiss on failure to exhaust grounds where plaintiff argued "that while the facility did have grievance procedures, he was not aware of them."). Indeed, courts have specifically held that, even where a "prisoner claimed he had not been informed how to file a grievance or given an inmate handbook describing the procedure," if the plaintiff does not allege that the "respective correctional facility 'did anything to frustrate or prevent him from utilizing [the grievance] procedures,' . . . 'there is no authority for waiving or excusing compliance with PLRA's exhaustion requirement.'" Simmons v. Stus, 401 F. App'x 380, 381 (10th Cir. 2010) (quoting Gonzales-Liranza v. Naranjo, 76 F. App'x 270, 273 (10 Cir. 2003)) (unpublished decision). Thus, any contention that plaintiff's failure-to-exhaust should be excused merely on the basis of his ignorance about the applicability of the ARP to safekeepers is dubious.

Relatedly, while most courts have held that ignorance concerning the grievance process is

10

insufficient, courts also generally require that the plaintiff show some initiative or positive effort to pursue his claims administratively in order to satisfy the PLRA. See Napier, 636 F.3d at 223-24 ("The Sixth circuit requires some affirmative efforts to comply with the administrative procedures before analyzing whether the facility rendered these remedies unavailable. Our Court has consistently analyzed whether an inmate's efforts to exhaust were sufficient under the circumstances, but in each case, the prisoner did *something*.") (internal quotations omitted) (emphasis in original). Such positive efforts, be they simple inquiries about the grievance policy, requests for grievance forms, submission of informal written complaints to administrators, etc., ordinarily must be frustrated or thwarted by administrators in order to dispense with the PLRA's exhaustion requirement. See Graham, 668 F.Supp.2d at 738 ("Most reported cases excusing compliance with a grievance system consider situations where an inmate was prevented from grieving by affirmative action."). Plaintiff makes no allegation concerning even nominal effort on his part to pursue his claims administratively. Nor has he cited to any case which persuasively finds that an inmate may simply do nothing in pursuing his claims administratively, and then later contend in federal court that he should be excused from the exhaustion requirement because he was unaware that the facility's general grievance policy applied specifically to him.

At bottom, plaintiff openly concedes that he did not "use the prisoner grievance procedure due to the fact that the [sic] was not in the Department of Corrections as a sentenced inmate, but only in custody for medical care and safe keeping." Compl. 10. Implicit in this explanation is that he was aware of a "prisoner grievance procedure," but that he chose not to avail himself of it due to his purported ignorance about the availability of the procedure to him specifically. Plaintiff does not allege that he ever so much as sought clarification on the availability of the ARP to safekeepers,

11

much less that administrators actually did anything to frustrate or prevent his efforts to utilize the grievance process. Rather, plaintiff apparently did nothing before filing suit in federal court and requesting the "court to waive this [exhaustion] requirement." Compl. ¶ 39. As such, plaintiff has failed to allege facts demonstrating that the ARP was unavailable to him or that he was prevented from utilizing it by facility administrators or employees. Therefore, the complaint is due to be dismissed for failure to state a claim upon which relief could be granted because of plaintiff's failure to exhaust his claim in the administrative process.

II.    Plaintiff's Pending Motions

As noted above, through counsel plaintiff has filed a "Motion to Stay Proceedings" [D.E. # 28] and a "Motion for Extension of Time" [D.E. # 29]. Plaintiff's "Motion to Stay Proceedings" is premised on counsel's professed need for "adequate time to prepare a thoroughly researched and investigated amended complaint" and his corresponding need to "collect additional medical records, a process which may take several weeks." Pl.'s Mem. in Supp. of Mot. To Stay [D.E. # 28-1] 2. The "Motion for Extension of Time" seeks "an extension of 21 days up to and including November 26, 2012, in which to file" a response to defendant's motion to dismiss. Pl.'s Mot. for Ext. 1. Because the defect in plaintiff's complaint warranting dismissal of this action may not be cured through amendment to the complaint, see Hayes v. Stanley, 204 F. App'x 304, 304 n.1 (4th Cir. 2006) (unpublished decision), plaintiff's "Motion to Stay Proceedings" is due to be denied as moot. Likewise, because plaintiff timely filed his response to the motion to dismiss, his motion for extension of time to file such response is also due to be denied as moot.

For all of the foregoing reasons, it is ORDERED as follows:

a.    defendant's motion to dismiss [D.E. # 24] plaintiff's complaint is GRANTED;

12

b.  plaintiff's complaint [D.E. # 1], which alleges that defendants were deliberately indifferent to his medical needs in violation of his constitutional rights pursuant to the Eighth and Fourteenth Amendments, see Compl. ¶ 41, is hereby DISMISSED without prejudice due to plaintiff's failure to exhaust available administrative remedies in accord with the PLRA, 42 U.S.C. § 1997e(a);

c.  plaintiff's "Motion to Stay Proceedings" [D.E. # 28] and "Motion for Extension of Time" [D.E. # 29] are DENIED as moot; and

d.  the Clerk of Court is DIRECTED to close this case.

SO ORDERED. This the 4th day of December, 2012.

*James C. Fox*
JAMES C. FOX
Senior United States District Judge